`UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| MARC SAVAGE and | ) | |
| RANDOLPH BLAKE, | ) | |
| Plaintiffs, | ) | |
| | ) | |
| | ) | |
| v. | ) | Civil No. 3:18-CV-30164-KAR |
| | ) | |
| | ) | |
| THE CITY OF SPRINGFIELD, | ) | |
| SPRINGFIELD FIRE DEPARTMENT, | ) | |
| FIRE COMMISSIONER BERNARD J. CALVI, | ) | |
| and FORMER FIRE COMMISSIONER | ) | |
| JOSEPH CONANT, | ) | |
| Defendants. | ) | |
| | ) | |

MEMORANDUM AND ORDER ON
DEFENDANTS' MOTION TO DISMISS
(Dkt No. 77)

ROBERTSON, U.S.M.J.

## I.    INTRODUCTION

Plaintiffs Marc Savage ("Savage") and Randolph Blake ("Blake"), both African American firefighters, bring this putative class action on behalf of themselves and other similarly situated minority firefighters against the defendants City of Springfield ("the City" or "Springfield"), the Springfield Fire Department ("SFD"), Fire Commissioner Bernard J. Calvi ("Calvi"), and former Fire Commissioner Joseph Conant ("Conant") (collectively, "Defendants") for alleged discrete acts of discrimination on the basis of race, creation of a hostile work environment, and unlawful retaliation.  In their amended complaint, Plaintiffs assert the following causes of action:  in Count I, discrimination in violation of Title VII of the Civil Rights Act of 1964; in Count II, discrimination in violation of Mass. Gen. Laws ch. 151B; in Count III,

1

violation of Mass. Gen. Laws ch. 31, § 1(e); in Count IV, unlawful retaliation; in Count V,

negligent supervision; in Count VI, intentional infliction of emotional distress; in Count VII,

constitutional equal protection; and in a second Count VII, breach of contract (Dkt. No. 76).

Presently before the court is Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)

(Dkt. No. 77).  The parties have consented to this court's jurisdiction.  *See* 28 U.S.C. § 636(c);

Fed. R. Civ. P. 73 (Dkt. No. 12).  For the following reasons, the motion to dismiss is GRANTED

in part and DENIED in part.

## II.   FACTS

The relevant facts are drawn from Plaintiffs' amended complaint and viewed in the light

most favorable to Plaintiffs.  *See Ruivo v. Wells Fargo Bank, N.A.*, 766 F.3d 87, 90 (1st Cir.

2014).

Savage has been an employee of the SFD for 39 years and currently holds the rank of

Captain (Dkt. No. 76 at ¶ 12).  Blake has been an employee of the SFD for 29 years and

currently holds the rank of Lieutenant (*id*. at ¶ 13).  Both Savage and Blake are African

American (*id*. at ¶ 11).  Savage is also a Muslim (*id*. at ¶ 12).

In March 2014, Savage sat for a Deputy Fire Chief exam along with only one other

applicant, Glenn Guyer, who is white (*id*. at ¶¶ 19, 25).  After the scores were posted in May

2014, Guyer, who does not live in Springfield, applied for a waiver of a residency requirement

for the position, which the Springfield mayor summarily denied (*id*. at ¶¶ 26-27).  This should

have resulted in Savage becoming the next Deputy Fire Chief based on his passing score on the

examination (*id*. at ¶¶ 28, 38).  However, when then Fire Commissioner Conant learned that

Guyer would not be eligible for the appointment, he protested the decision of the

Commonwealth's Human Resources Department to hold the examination when there were only

two applicants, despite the fact that he had known of the limited number of applicants since two weeks before the exam was administered (*id*. at ¶¶ 19, 30).   As a result of pressure applied by Conant, the Commonwealth's Human Resources Department canceled the May 2014 examination results, depriving Savage of the Deputy Fire Chief position (*id*. at ¶¶ 32-33). Conant's opposition to Savage's selection for Deputy Fire Chief was motivated by racial bias (*id*. at ¶ 34).

On July 3, 2014, Savage filed a civil service appeal, which included allegations of unlawful discrimination (*id*. at ¶ 45).   On September 5, 2014, Savage filed a discrimination complaint with the Massachusetts Commission Against Discrimination ("MCAD") (*id*. at ¶ 47).

On the same date in March 2014 that Savage and Guyer took the Deputy Fire Chief examination, six applicants took an identical examination for the position of District Chief (*id*. at ¶ 23).   Even though the Deputy Fire Chief examination was canceled after the fact, Savage's score was sufficient to qualify him for a District Chief position (*id*. at ¶ 44).   In October 2014, District Chief John Murphy conducted an evaluation of Savage in connection with the upcoming interviews for District Chief, scheduled for November 5, 2014 (*id*. at ¶ 48).   Murphy rated Savage a three on a five-point scale on ten of the fourteen categories listed on the evaluation sheet, despite the fact that only one year earlier when Savage was being considered for promotion to Captain, he was rated with fours and fives in the same categories (*id*. at ¶ 52). Murphy also commented that Savage was not ready to act in the District Chief position because he was not fully trained in the operation of Telestaff (*id*. at ¶ 49).   However, Savage had previously asked to be trained in Telestaff so that he would be better prepared to fill the District Chief role if he was selected for it (*id.* at ¶ 45).   Conant had refused, saying that Savage would

3

have to wait until he was a permanent captain for six months before he could be trained (*id*. at ¶ 46).

Savage raised concerns about Murphy's evaluation of him with District Chief Vincent Neffinger (*id*. at ¶ 53). Within a few days, Murphy changed his evaluation twice, but maintained his position that Savage was not ready to assume the role of District Chief in any capacity until he had more training (*id*. at ¶ 53). A few days later, Captain Robert Fancy, a white District Chief candidate with only 12 years on the job (as compared to Savage's 36), was placed in the Acting District Chief position for the night (*id*. at ¶ 54). Fancy informed Savage that he had been trained for only a few hours before being placed in the role (*id*. at ¶ 54).

Guyer had the final say in filling the District Chief position (*id*. at ¶ 60). Two other captains – Jaime Erickson and Brian Pereira – were ultimately promoted to the position of Temporary District Chief (*id*. at ¶ 55). Erickson, a white candidate, had only 17 years on the job, had only five hours of training, and had never been Acting District Chief before his promotion (*id*. at ¶ 59). When Savage asked Murphy if he was ready to assume the role of District Chief in an acting capacity, Murphy replied that he would not approve Savage as ready for the role of District Chief in any capacity, since he had never been evaluated as an Incident Commander (*id*. at ¶ 56). However, Erickson had never been evaluated as Incident Commander before his promotion (*id*. at ¶ 59).

On April 2, 2016, Conant ordered District Chief Michael Hess to discipline Savage by giving him an unwarranted verbal warning for allegedly failing to properly train a recruit (*id*. at ¶ 63). No investigation was conducted and Savage was not provided any opportunity to be heard before the discipline was imposed (*id*. at ¶ 64). In contrast, Savage had brought charges against two subordinates – one for disrespectful behavior and the other for disobeying a directive – and

4

Conant let two months pass without taking any action with regard to one case and issued no discipline in the other, deeming it a mere misunderstanding (*id*. at ¶¶ 67-68). Savage requested that Springfield's Human Resources Department take immediate action to address Conant's discriminatory and retaliatory conduct, but it was never addressed (*id*. at ¶ 70).

Savage was the lead plaintiff and Blake was a named plaintiff in a lawsuit seeking enforcement of the SFD's residency requirement (*id*. at ¶ 81). In the lawsuit, the plaintiffs alleged that the defendants' failure to enforce the residency requirement had disadvantaged them and other minority firefighters in hiring and promotions (*id*. at ¶ 81). The court issued a finding on February 14, 2017 that the residency requirement was valid and enforceable (*id*. at ¶ 81). This generated additional hostility by Defendants toward Plaintiffs (*id*. at ¶ 81).

Savage testified at a hearing before the MCAD on June 14, 2017 regarding racial and religious harassment within the SFD (*id*. at ¶ 82). Two months later, without having been provided any opportunity to be heard, Savage received a letter stating that he was being suspended and transferred (*id*. at ¶ 83). In issuing the suspension, Defendants failed to follow their own progressive discipline policy (*id*. at ¶ 83).

In addition to these alleged discrete acts of discrimination, Savage and Blake allege that they have been subjected to a hostile work environment. Specifically, Savage and Blake have been subjected to offensive racist and anti-Muslim comments and images both in person and on social media platforms (*id*. at ¶¶ 72-77). In some instances, SFD personnel – including SFD supervisors – posted the offensive material while they were on duty (*id*. at ¶¶ 74, 78). Plaintiffs alerted Defendants to the seriousness of the problem, but they "failed to take prompt and effective remedial action to address the hostile work environment being fostered by the continued posting of racist and Islamophobic images by its employees" (*id*. at ¶ 75).

According to Plaintiffs, Defendants also selectively allowed white firefighters to illegally retain civil service positions while denying minorities opportunities for advancement, arbitrarily enforced Springfield's residency requirement in civil service promotions, and engaged in unfair and biased investigative and disciplinary practices. Plaintiffs provide examples in support of each of these claims. In August 2016, July 2017, and March 2018, white employees were selected to work as temporary Captains instead of Blake (*id*. at ¶¶ 86-90). In each instance, the SFD failed to follow its established procedures in favor of preselected white candidates (*id*. at ¶¶ 86-90). The SFD refused to enforce the residency ordinance, which has disproportionately disadvantaged minority applicants in the selection process for chief positions (*id*. at ¶¶ 91-92). Finally, "[w]hen minority members are accused of violating policy, SFD's investigations are typically swift, aggressive and overreaching. When white members are accused of violating policy, SFD is often slow to investigate, if it does so at all, and the investigations are often purely cosmetic" (*id*. at ¶ 93). No action was taken against numerous white members found responsible for posting racist and anti-Muslim images on an SFD website in 2016 and 2017; no actions were taken against Lieutenant Kneeland for fabricating charges against Blake and Savage in 2017; and no investigation was conducted or action taken against Guyer and Kneeland for bullying and harassment charges submitted by Blake and Savage on August 31, 2017 (*id*. at ¶ 94).

## III.   LEGAL STANDARD

"A Rule 12(b)(6) motion to dismiss challenges a party's complaint for failing to state a claim." *Ngomba v. Olee*, CIVIL ACTION NO. 18-11352-MPK, 2020 WL 107969, at *2 (D. Mass. Jan. 9, 2020). In ruling on the motion, a court must "treat all well-pleaded facts in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 919 F.3d 121, 127 (1st Cir. 2019) (citing *Ocasio-Hernández*

*v. Fortuño-Burset*, 640 F.3d 1, 7 (1st Cir. 2011)).  "In order to survive a motion to dismiss under

Rule 12(b)(6), the plaintiff must provide 'enough facts to state a claim to relief that is plausible

on its face.'"  *Ngomba,* 2020 WL 107969, at *2 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

"[L]abels and [legal] conclusions, and a formulaic recitation of the elements of a cause of action

...." are insufficient to "raise a right to relief above the speculative level."  *Twombly,* 550 U.S. at

555.  "Simply put, the court should assume that well-pleaded facts are genuine and then

determine whether such facts state a plausible claim for relief."  *Ngomba,* 2020 WL 107969, at

*2 (citing *Iqbal*, 556 U.S. at 679).

## IV.    DISCUSSION

### A.    Springfield Fire Department as a Party

Plaintiffs name the SFD as a defendant in this action.  Defendants have moved to dismiss

the claims against the SFD on the ground that the SFD is not a legal entity and it is not

authorized to sue or be sued.  Plaintiffs counter that "[i]n the employment law context, the key

jurisdictional issue is whether the Defendants are 'employers' within the meaning of 151B and

Title VII, not whether they are recognized as legal entities in the unrelated context of police

brutality and contract disputes cited in the cases Defendant referenced" (Dkt. No. 81 at p. 3).

The court agrees with Defendants that the SFD has "no legal existence or liability to suit

separate from the City of [Springfield]."  *Douglas v. Boston Police Dep't*, C.A. No. 10-11049-

WGY, 2010 WL 2719970, at *2 (D. Mass. July 1, 2010) (citing *Henschel v. Worcester Police

Dep't, Worcester, Mass.*, 445 F.2d 624, 624 (1st Cir. 1971); *Stratton v. City of Boston*, 731 F.

Supp. 42, 46 (D. Mass. 1989)).  Contrary to Plaintiffs' argument, this outcome is not limited to police brutality cases or contract disputes.  Indeed, another session of this court has recently applied this rule to dismiss claims against the Boston Police Department in a Title VII case. *James v. Boston Police Dep't*, Civil Action No. 19-10430-FDS, 2020 WL 108266, at *3 (D. Mass. Jan. 9, 2020) (noting that "[t]he Boston Police Department is not an entity separate from the City of Boston" and dismissing the claims against it).  Nor is there any need for the SFD to be named as a party, as it is the City that would ultimately pay any judgment.  Accordingly, the SFD is not a proper defendant to this lawsuit, and all claims against it are dismissed.

B.  Count I:  Title VII Violation

Plaintiffs assert that the City and Conant discriminated against them on the basis of race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*. (Dkt. No. 76 at ¶¶ 100-110).  Defendants move to dismiss the claim on several grounds, each of which the court addresses in turn.

1.  Individual Liability

Defendants first argue that the Title VII claim against Conant cannot stand because there is no individual liability under the statute.  For support, Defendants cite *Fantini v. Salem State College*, 557 F.3d 22, 29 (1st Cir. 2009)).  Plaintiffs counter that Conant is a proper defendant in their Title VII claim because the court allowed their motion to amend as to Conant in the absence of opposition by Defendants.  Plaintiffs further cite *Curran v. City of Boston*, 777 F. Supp. 116, 120 (D. Mass. 1991), for the proposition that there is sufficient legal foundation to include Conant as a defendant in their Title VII claim.

On this issue, Defendants are correct.  It is established law in this circuit that "there is no individual employee liability under Title VII." *Fantini*, 557 F.3d at 30.  Plaintiffs' reliance on

*Curran* is inapposite, as *Curran* involved application of the standard for supervisory liability under Section 1983, not Title VII. *Id.*, 777 F. Supp. at 122. Plaintiffs' invocation of this court's order on their motion to amend is also unavailing as the order explicitly noted that "Title VII does not give rise to individual liability" (Dkt. No. 75 at p. 8). Accordingly, Plaintiffs' Title VII claim against Conant is dismissed.[1]

### 2. Administrative Exhaustion

Defendants also argue that Plaintiffs failed to exhaust their administrative remedies. "'Title VII requires exhaustion of administrative remedies as a condition precedent to suit in federal district court.'" *Badio v. G4S Solution USA*, No. 19-cv-12591-ADB, 2021 WL 102656, at *3 (D. Mass. Jan. 12, 2021) (quoting *Jensen v. Frank*, 912 F.2d 517, 520 (1st Cir. 1990)). "'This task embodies two key components: the timely filing of a charge with the EEOC and the receipt of a right-to-sue letter from the agency.'" *James*, 2020 WL 108266, at *3 (quoting *Rivera-Diaz v. Humana Ins. of Puerto Rico, Inc.*, 748 F.3d 387, 389-90 (1st Cir. 2014)). The former component, timely filing of an administrative charge, requires that a person seeking relief under Title VII file with the EEOC "within one hundred and eighty days after the alleged employment practice occurred," or, if a claim is filed instead with a state or local agency, "within three hundred days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1)); *see also Rodriguez v. Smithkline Beecham*, 224 F.3d 1, 7 (1st Cir. 2000). "The employee may sue in federal court only if the EEOC dismisses the administrative charge, or if it does not bring civil suit or enter into a conciliation agreement within 180 days of the filing of the

---

[1] Defendants also move for dismissal of Plaintiffs' Title VII claim against Calvi, but Plaintiffs have not asserted one (Dkt. No. 76 at p. 29 (specifying that Count I is asserted against the "City of Springfield, Springfield Fire Department, and Joseph Conant")). Of course, to the extent that Plaintiffs did assert a Title VII claim against Calvi, it would be subject to dismissal on the same grounds.

administrative charge." *Franceschi v. U.S. Dept. of Veterans Affairs*, 514 F.3d 81, 85 (1st Cir. 2008) (citing 42 U.S.C. § 2000e–5(f)(1)). "In either case, the EEOC must send the employee notice, in the form of what is known as a right-to-sue letter." *Id*. (footnote omitted) (citing *Jorge v. Rumsfeld,* 404 F.3d 556, 564 (1st Cir. 2005); *Clockedile v. N.H. Dep't of Corr.*, 245 F.3d 1, 3 (1st Cir. 2001)); *see also* 42 U.S.C. § 2000e–5(f)(1). "The latter component, the right-to-sue letter, informs the putative plaintiff that her administrative remedies have been exhausted and that she may bring a civil action." *James*, 2020 WL 108266, at *3 (citing *Loubriel v. Fondo del Seguro del Estado*, 694 F.3d 139, 142 (1st Cir. 2012)). The employee has ninety days from receipt of the right-to-sue letter to file in federal court. *Franceschi*, 514 F.3d at 85 (citing 42 U.S.C. § 2000e–5(f)(1)). "'[T]he failure to exhaust this administrative process "bars the courthouse door."'" *Badio*, 2021 WL 102656, at *3 (alteration in original) (quoting *Franceschi*, 514 F.3d at 85).

Defendants challenge both components of administrative exhaustion. First, Defendants maintain that there is no way to discern from the amended complaint whether suit was filed within ninety days of Plaintiffs' receipt of their right-to-sue letters because there are no allegations about when the letters were received. However, at the court's request, Plaintiffs have filed the relevant administrative filings related to the charges of discrimination (Dkt. No. 86). These documents are appropriately considered on a motion to dismiss because they are official public records. *Woods v. Covidien LP*, Civil Action No. 15-30094-MGM, 2016 WL 2733102, at *1 (D. Mass. May 10, 2016) (citing *Johnson v. Amherst Nursing Home, Inc.*, No. 14-cv-30100-MGM, 2015 WL 4750932, at *3 n.3 (D. Mass. Aug. 11, 2015)). They reflect that the Department of Justice Civil Rights Division issued Savage and Blake their right-to-sue letters on July 11, 2018 (Dkt. Nos. 86-8, 86-9). This case was filed ninety days later, on October 9, 2018

(Dkt. No. 1).  Because Plaintiffs could not have received their right-to-sue letters before they were issued, Plaintiffs have clearly met the ninety-day statute of limitations.

Secondly, Defendants argue that the amended complaint seeks to recover for discrete acts of employment discrimination that occurred outside the statute of limitations.  Plaintiffs' supplemental filing shows that Savage filed his complaint with the MCAD on August 22, 2017, while Blake filed his on February 28, 2018 (Dkt. Nos. 86-5, 86-6).  Because Savage and Blake each filed with a state agency, Title VII's 300-day deadline applies.  *See* 42 U.S.C. § 2000e-5(e)(1); *Franchina v. City of Providence*, 881 F.3d 32, 47 (1st Cir. 2018).  "The applicable procedure … calls for counting back [300] days to determine the earliest possible date that an unlawful employment action could have occurred and still be actionable."  *Maldonado-Catala v. Municipality of Naranjito*, 876 F.3d 1, 9 n.9 (1st Cir. 2017).  Thus, only unlawful employment practices that happened to Savage on or after October 26, 2016 are actionable on their own.  For Blake, the relevant date is May 4, 2017.  Many of the adverse actions directed at Savage alleged in the amended complaint occurred well before October 26, 2016 (i.e., June 2014 failure to promote Savage to Deputy Fire Chief, July 2014 failure to train Savage on Telestaff, October 2014 unfair evaluation of Savage by District Chief Murphy, November 2014 failure to promote Savage to District Chief, and April 2016 unfair discipline of Savage).  At least one adverse action directed at Blake alleged in the amended complaint occurred before May 4, 2017 (i.e.. August 2016 failure to promote Blake to Captain).

Plaintiffs do not disagree that some of the acts alleged in the amended complaint occurred more than 300 days before Plaintiffs filed their MCAD complaints and, therefore, are untimely on their own.  However, they assert that because Defendants subjected Plaintiffs to harassment

and adverse actions within the filing periods, the continuing violation doctrine applies such that they can seek a remedy for the discrimination that preceded the filing periods.

"The continuing violation doctrine 'is an equitable exception that allows an employee to seek damages for otherwise time-barred allegations if they are deemed part of an ongoing series of discriminatory acts and there is some violation within the statute of limitations period that anchors the earlier claims.'" *Loubriel v. Fondo del Seguro del Estado*, 694 F.3d 139, 144 (1st Cir. 2012) (quoting *O'Rourke v. City of Providence*, 235 F.3d 713, 730 (1st Cir. 2001)). "Such tolling is an equitable means of ensuring that meritorious discrimination claims are not pretermitted because the claimant needed to experience a pattern of repeated acts before she could be expected to realize that the individual acts were discriminatory in nature." *Loubriel*, 694 F.3d at 144 (*citing Thomas v. Eastman Kodak Co.*, 183 F.3d 38, 54 (1st Cir. 1999)). In determining whether the continuing violation doctrine applies, it is important to be "mindful of the important 'baseline rule … that time limitations are important in discrimination cases, and that federal courts therefore should employ equitable tolling sparingly.'" *Brader v. Biogen, Inc.*, 983 F.3d 39, 60 (1st Cir. 2020) (alteration in original) (quoting *Bonilla v. Muebles J.J. Alvarez, Inc.*, 194 F.3d 275, 278 (1st Cir. 1999)).

To determine whether Plaintiffs can avail themselves of the continuing violation doctrine, the court "must keep in mind a key distinction the Supreme Court has articulated between the tolling of (1) discrete incidents of discrimination and (2) hostile work environment claims." *Franchina*, 881 F.3d at 46.

> "Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify," *Nat'l R.R. Passenger Grp. v. Morgan*, 536 U.S. 101, 114 (2002), and, consequently, those "acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Campbell v. BankBoston, N.A.*, 327 F.3d 1, 11 (1st Cir. 2003)

(citation omitted).  Hostile work environment claims, on the other hand, generally "do not 'turn on single acts but on an aggregation of hostile acts extending over a period of time.'"  *Marrero v. Goya of P.R., Inc.*, 304 F.3d 7, 18 (1st Cir. 2002) (quoting *Havercombe v. Dep't of Educ.*, 250 F.3d 1, 6 (1st Cir. 2001)).  For this reason, an equitable exception to the 300-day filing period is recognized under Title VII for the "ongoing pattern[s] of discrimination," that are part and parcel with hostile work environment claims. *O'Rourke v. City of Providence*, 235 F.3d 713, 726 (1st Cir. 2001) (citations omitted); *see also Nat'l R.R. Passenger Corp.*, 536 U.S. at 122.  The continuing violation doctrine, in other words, allows plaintiffs to proceed on a hostile work environment claim "so long as all acts which constitute the claim are part of the same unlawful employment practice and <u>at least one act falls within the time period.</u>"  *Nat'l R.R. Passenger Corp.*, 536 U.S. at 122 (emphasis added).  Thus, in determining liability in a hostile work environment claim, all "component acts" of the claim that occurred outside of the limitations period may be considered.  *Tobin v. Liberty Mut. Ins. Co.*, 553 F.3d 121, 130 (1st Cir. 2009).

*Franchina*, 881 F.3d at 46-47 (footnote omitted).

Plaintiffs claim discrimination based on both discrete acts and a hostile work environment.  Pursuant to *Morgan*, Plaintiffs may not avail themselves of the continuing violation doctrine relative to discrete acts of discrimination.  Thus, Plaintiffs' claims of discrimination based on discrete acts that occurred prior to October 26, 2016 for Savage and May 4, 2017 for Blake are untimely and not actionable.  This includes the June 2014 failure to promote Savage to Deputy Fire Chief, July 2014 failure to train Savage on Telestaff, October 2014 unfair evaluation of Savage by District Chief Murphy, November 2014 failure to promote Savage to District Chief, and April 2016 unfair discipline of Savage, as well as the August 2016 failure to promote Blake to Captain.  Plaintiffs' claims of discrimination based on discrete acts

may proceed only as to incidents that took place after those dates, including the August 2017 suspension of Savage and the July 2017 and March 2018 failures to promote Blake to Captain.[2]

Conversely, with respect to Plaintiffs' hostile work environment claims, "[i]n order for the charge to be timely, [Plaintiffs] need only [have] filed a charge within . . . 300 days of any act that is part of the hostile work environment." *Morgan*, 536 U.S. at 118.  The so called "'anchoring act' must itself be discriminatory," *Perez v. Horizon Lines, Inc.*, 804 F.3d 1, 8 (1st Cir. 2015), and it "must 'substantially relate[ ] to [the] earlier incidents of abuse.'" *Lockridge v. The Univ. of Maine Sys.*, 597 F.3d 464, 474 (1st Cir. 2010) (alterations in original) (quoting *Noviello v. City of Boston*, 398 F.3d 76, 86 (1st Cir. 2005)).  "Acts of harassment are related, for purposes of the continuing violation doctrine, if each individual act is part of the whole hostile work environment." *Leclair v. Donovan Spring Co., Inc.*, Civil No. 18-cv-669-JD, 2018 WL 6519074, at *3 (D.N.H. Dec. 11, 2018) (citing *Morgan*, 536 U.S. at 118).

As set forth above, Plaintiffs have alleged certain acts that occurred within the 300-day limit, namely the August 2017 suspension of Savage and the July 2017 and March 2018 failures to promote Blake to Captain.[3]  Additionally, Plaintiffs have alleged that "[o]ther firefighters have posted offensive images and messages on SFD social media platforms that demean and promote negative stereotypes of African-Americans and Muslims," and that at least one of these posts occurred in August 2018 (Dkt. No. 76 at p. 20).  Plaintiffs allege that these various acts were part of a "long-standing and well-established policy, custom, and practice of opposing racial equality, enforcing racial subordination, engaging in favoritism toward white firefighters, and retaliating

---

[2] In their opposition to Defendants' motion to dismiss, Plaintiffs make more allegations based on facts that are not alleged in the amended complaint.  The court will not consider any facts not found in the amended complaint.

[3] Plaintiffs allege other discrimination in their amended complaint without providing specific dates.

against persons who protest racial discrimination" (Dkt. No. 76 at p. 2). "Therefore, as alleged, the earlier incidents and actions are sufficiently related to the [timely] incidents to support a continuing violation exception to the 300-day deadline in the context of opposing a motion to dismiss." *Leclair*, 2018 WL 6519074, at *4. Moreover, "even if [Plaintiffs] ultimately cannot show a continuing violation, [they] can use 'the prior acts as background evidence in support of a timely claim.'" *Id.* (quoting *Morgan*, 536 U.S. at 113).

### 3.   Municipal Ownership or Control of the Social Media Websites

Defendants appear to argue that Plaintiffs' Title VII claim arising from the allegedly offensive social media posts should be dismissed because the pages were not "affiliated" with the SFD as Plaintiffs have alleged or there is no evidence of a racial or retaliatory motive vis-à-vis the social media posts. Defendants cite to *Maldonado-Catala v. Municipality of Naranjito*, 876 F.3d 1 (1st Cir. 2017), as a case in which "the First Circuit has affirmed the grant of summary judgment for all defendants on appellant's hostile work environment claims under both federal and Commonwealth law where derogatory facebook posts were cited as the basis for the hostile environment" (Dkt. No. 78 at p. 12).

Defendants' arguments are readily dismissed. Questions concerning the relationship between Defendants and the social media pages in issue and whether the posts were motivated by racial or religious bias are questions of fact and, as such, are not suitable for resolution on a motion to dismiss. Moreover, Defendants' reliance on *Maldonado-Catala* is misleading. In *Maldonado-Catala*, the allegedly discriminatory Facebook activity occurred outside the statute of limitations and was time-barred where the court concluded that the plaintiff had failed to make a sufficient showing on summary judgment for application of the continuing violation doctrine. *Id.*, 876 F.3d at 10, 13-14. Nothing in the court's opinion suggested that it was affirming

summary judgment against the plaintiff either because the challenged Facebook activity was not sufficiently affiliated with the municipality or that there was a lack of evidence that it was motivated by unlawful bias.  Further, the court affirmed its precedent that non-workplace conduct can be considered "'to help determine the severity and pervasiveness of the hostility in the workplace' and to establish the unlawful motivation."  *Id*. at 10 n.10 (quoting *Crowley v. L.L. Bean, Inc.*, 303 F.3d 387, 409 (1st Cir. 2002)).  Thus, this argument presents no basis for dismissal.

### 4.  Class Action Allegations

Defendants next make an undeveloped argument that Plaintiff's amended complaint, insofar as it asserts a class action, should be dismissed for lack of subject matter jurisdiction because Plaintiffs "have failed to set forth grounds to show standing sufficient to plead a class action" (Dkt. No. 78 at p. 12).  But Plaintiffs are not required to make any special showing of standing to assert a class action.  Rather, "[o]nce a plaintiff establishes his own standing, the question of whether a plaintiff will be able to represent the putative class, 'depends solely on whether he is able to meet the additional criteria encompassed in Rule 23 of the Federal Rules of Civil Procedure.'"  *Glass Dimensions, Inc. v. State Street Bank & Trust Co.*, 285 F.R.D. 169, 174 (D. Mass. 2012) (quoting *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423 (6th Cir. 1998)).  *See also In re Nexium (Esomeprazole) Antitrust Litig.*, 968 F. Supp. 2d 367, 404 (D. Mass. 2013) ("Defendants erroneously conflate the requirements of Article III, for the purposes of assessing constitutional standing of the named plaintiffs, with the procedural requirements of Rule 23, which are designed to determine whether a putative class representative for whom Article III standing has already been established may also raise the claims of the class which it purports to represent." (footnote omitted)).

While Defendants do not invoke the rule, what they are really attempting to do is to have the court strike Plaintiffs' class allegations pursuant to Fed. R. Civ. P. 12(f), which permits a court to delete a complaint's class allegations "[i]f it is obvious from the pleadings that the proceeding cannot possibly move forward on a classwide basis." *Manning v. Boston Med. Ctr. Corp.*, 725 F.3d 34, 59 (1st Cir. 2013) (citing *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011)).  However, district courts "should exercise caution when striking class action allegations based solely on the pleadings," because doing so requires a "'court to preemptively terminate the class aspects of ... litigation, solely on the basis of what is alleged in the complaint, and before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification.'"  *Id*. (quoting *Mazzola v. Roomster Corp.,* 849 F. Supp. 2d 395, 410 (S.D.N.Y. 2012) (alteration in original)).  Here, it is not patent from the complaint that this case cannot proceed as a class action, and "a determination of whether the Rule 23 requirements are met is more properly deferred to the class certification stage, when a more complete factual record can aid the Court in making this determination." *Mazzola*, 849 F. Supp. 2d at 410 (citations omitted).

C.  <u>Count II: Violation of Mass. Gen. Laws ch. 151B</u>

In addition to their claim of discrimination pursuant to federal law, Plaintiffs assert that Defendants violated state anti-discrimination law, namely Mass. Gen. Laws ch. 151B. Defendants move to dismiss Plaintiffs' state law claims arising from certain adverse actions as untimely.  Specifically, pursuant to Mass. Gen. Laws. ch. 151B, § 9, claims of employment discrimination have a three-year statute of limitations.  Plaintiffs did not file this action until October 9, 2018.  Thus, according to Defendants, to the extent Plaintiffs' claims are based on adverse actions alleged to have occurred before October 9, 2015 – including the June 2014

failure to promote Savage to Deputy Fire Chief, the July 2014 failure to train Savage on

Telestaff, the October 2014 unfair evaluation of Savage by District Chief Murphy, and the

November 2014 failure to promote Savage to District Chief – they are time barred.

Plaintiffs again rely on the continuing violation doctrine to try to rescue their claims.

"The application of the continuing violation doctrine sometimes has the effect of expanding the

three-year filing deadline for suits under chapter 151B." *Noviello*, 398 F.3d at 86 (citations

omitted).  For the continuing violation doctrine to apply, a plaintiff must ordinarily prove that:

(1) at least one discriminatory act occurred within the limitations period; (2) the alleged timely

discriminatory act has a substantial relationship to the alleged untimely discriminatory acts; and

(3) earlier violations outside the limitations period did not trigger a plaintiff's awareness and duty

to assert his or her rights.  *Ocean Spray Cranberries, Inc. v. Massachusetts Comm'n Against

Discrimination*, 808 N.E.2d 257, 266-67 (Mass. 2004).  A plaintiff's "awareness and duty" is

triggered when she "knew or could have formed a reasonable belief that the earlier violations

were discriminatory."  *Id.* at 267 n.16.

Here, application of the continuing violation doctrine under state law founders on the

third element.  The allegations of the complaint demonstrate that Savage was aware of the

allegedly discriminatory nature of the actions at or near the time they occurred.  In their amended

complaint, Plaintiffs allege that Savage filed a civil service appeal on July 3, 2014, in which he

raised allegations of unlawful discrimination, and that he filed more than one complaint at the

MCAD, including one as early as September 5, 2014 (Dkt. No. 76 at ¶¶ 45, 47, 80).  Review of

the administrative fillings, which are appropriately considered on a motion to dismiss, cements

the issue.  In his September 5, 2014 complaint with the MCAD, Savage alleged that the June

2014 failure to promote him to Deputy Fire Chief was discriminatory (Dkt. No. 86-1).  He

amended this complaint on January 31, 2015, to add allegations that the July 2014 failure to train

him on Telestaff and District Chief Murphy's October 2014 evaluation were instances of

discrimination and retaliation (Dkt. Nos. 86-2 and 86-3).  Thus, Defendants are entitled to

dismissal of Plaintiffs' claims of discrimination pursuant to Mass. Gen. Laws ch. 151B to the

extent they are premised on actions alleged to have occurred before October 9, 2015.[4]

Defendants also argue that Plaintiffs' claims of a hostile work environment through the

use of social media are subject to dismissal even if some of the alleged actions are within the

statute of limitations because they have "no connection to supervisory involvement" (Dkt. No.

78 at p. 14).  This presents a disputed issue of fact.  Plaintiffs have alleged in their amended

complaint that a number of the offensive comments and images were posted by supervisors (Dkt.

No. 76 at ¶¶ 74, 78).  Thus, resolution of this issue is not suitable on a motion to dismiss.

D.  Count III:  Violation of Mass. Gen. Laws ch. 31, §1(e)

In Count III of their Amended Complaint, Plaintiffs purport to assert a claim pursuant to

Mass. Gen. Laws ch. 31, §1(e).  However, as the court previously noted in its order on Plaintiffs'

motion for leave to file the amended complaint, Chapter 31 is the Massachusetts Civil Service

Law; § 1 is a purely definitional section and no subsection (e) appears therein.  As such, Count

III fails to state a claim upon which relief may be granted, and it is subject to dismissal.[5]

---

[4] Defendants make a separate argument that any claim of discrimination arising from the June 2014 failure to promote Savage to Deputy Fire Chief is subject to dismissal because the Commonwealth's civil service statute requires at least four examinees for promotional examinations.  According to Defendants, because Plaintiffs have alleged that there were only two examinees, this establishes a legitimate, non-discriminatory reason for the adverse action.  The court need not address this argument, insofar as any claim arising from the June 2014 failure to promote is subject to dismissal as untimely.

[5] In their opposition to the motion to dismiss, Plaintiffs also cite to Mass. Gen. Laws ch. 31, § 32(a), but § 32 deals with emergency appointments to labor positions and there is no subsection (a).

E. Count IV:  Unlawful Retaliation

Plaintiffs assert a claim for "unlawful retaliation" in Count IV of their amended

complaint without identifying any statutory basis.  Retaliation is actionable under both Title VII

and Mass. Gen. Laws ch. 151B.  *See* 42 U.S.C. § 2000e-3(a); Mass. Gen. Laws ch. 151B, § 4(4).

Defendants move for dismissal of the retaliation claims against Calvi and Conant under both

federal and state law.

As to Title VII, Defendants repeat their argument that there is no individual liability,

which is correct.  *Fantini*, 557 F.3d at 31.  Thus, to the extent that Plaintiffs state a Title VII

retaliation claim against Calvi and Conant individually, it is subject to dismissal.

"Unlike Title VII, Chapter 151B allows for recovery against individual defendants

found liable for discrimination under the statute."  *Soni v. Wespiser*, 239 F. Supp. 3d 373, 385

(D. Mass. 2017) (citations omitted).  There are four elements to a claim of retaliation under

Massachusetts law.

> First, there must be evidence that the employee "reasonably and in
> good faith believed that the employer was engaged in wrongful
> discrimination."  *Pardo v. General Hosp. Corp.*, 841 N.E.2d 692,
> 707 (2006).  Second, there must be evidence that the employee
> "acted reasonably in response to that belief," *id.*, through
> reasonable acts meant "to protest or oppose ... discrimination"
> (protected activity).  *See Fantini v. Salem State College*, 557 F.3d
> 22, 32 (1st Cir. 2009).  Third, there must be evidence that the
> employer took adverse action against the employee.  *See Pardo v.
> General Hosp. Corp., supra.*  Finally, there must be evidence that
> the adverse action was a response to the employee's protected
> activity (forbidden motive).  *See id.*

*Verdrager v. Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C.*, 50 N.E.3d 778, 800 (Mass.

2016).  Defendants take issue with the third and fourth elements, arguing that Plaintiffs have not

identified "any 'adverse action' that could give rise to an inference of retaliation that violated

Chapter 151B" and that "there is no evidence to show a causal connection between the protected

20

activity and any other claims of adverse employment action alleged against others" (Dkt. No. 78 at pp. 15-16).

Under the retaliation provision of the statute, "adverse actions consist of a defendant's action 'to discharge, expel or otherwise discriminate against' the plaintiff." *Mole v. Univ. of Mass.*, 814 N.E.2d 329, 339 n.14 (Mass. 2004) (quoting Mass. Gen. Laws ch. 151B, § 4(4)). "Any such action that 'materially disadvantage[s]' a plaintiff is an adverse employment action for purposes of a retaliation claim." *O'Brien v. Mass. Inst. of Tech.*, 976 N.E.2d 154, 159 (Mass. App. Ct. 2012) (quoting *Psy-Ed Corp. v. Klein*, 947 N.E.2d 520, 530 (Mass. 2011)). "To prevail on a retaliation claim, the plaintiff must also establish a but-for causal connection between the protected activity and the adverse employment action." *Posada v. ACP Facility Servs., Inc.*, 389 F. Supp. 3d 149, 158 (D. Mass. 2019) (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013)). "In other words, a plaintiff must show that the adverse action would not have occurred in the absence of the protected activity." *Soni v. Wespiser*, 404 F. Supp. 3d 323, 332 (D. Mass. 2019). "While the plaintiff must ultimately prove all of the elements of … retaliation in order to prevail, the initial burden of demonstrating a claim … is not intended to be onerous and the plaintiff need not establish every element of the prima facie case at the pleading stage." *Posada*, 389 F. Supp. 3d at 158 (citing *Sullivan v. Liberty Mut. Ins. Co.*, 825 N.E.2d 522, 530 (Mass. 2005) (additional citations omitted)).

Here, Plaintiffs' amended complaint states plausible claims for retaliation against Conant and Calvi.  With respect to Conant, Plaintiffs have alleged at least one timely adverse action that followed protected activity, namely Conant's April 2, 2016 order to District Chief Michael Hess to discipline Savage by giving him a meritless and unwarranted verbal warning (Dkt. No. 76 at ¶

63).[6]  *See O'Brien*, 976 N.E.2d at 159 (holding that a verbal warning may constitute an adverse

action).  The verbal warning followed both Savage's filing of an original complaint and amended

complaint with the MCAD on September 5, 2014 and January 31, 2015, respectively, and

occurred only one day after Savage spoke at a City Council meeting about Conant's failure to

enforce the City's residency requirement, which Plaintiffs allege was discriminatory.  This

temporal proximity is sufficient at this stage to support an inference of a causal connection.

As to Calvi, the court has already held in its order regarding Plaintiffs' motion to file the

amended complaint that Plaintiffs have stated a retaliation claim under Chapter 151B.  Plaintiffs

allege that on March 14, 2019, Calvi told Savage that if he wanted to be promoted to District

Chief, he needed "to leave the legal issue of residency outside of the department" (Dkt. No. 76 at

¶ 122).  This statement "is sufficient at this early stage in the litigation to raise an inference that

Calvi knew about and condoned retaliation against Savage for Savage's complaints about

discrimination and retaliation.  In view of Calvi's supervisory role, Plaintiffs' allegations are

sufficient to state claims under Chapter 151B" (Dkt. No. 75 at 12) (citing *Posada*, 389 F. Supp.

3d at 159).

F.   Count V:  Negligent Supervision

In Count V of their amended complaint, Plaintiffs assert a claim of negligent supervision

against the City and Conant.  "All tort claims based on acts of public employees acting within the

scope of employment must be brought pursuant to the Massachusetts Tort Claims Act."  *Doe v.*

*Fournier*, 851 F. Supp. 2d 207, 223 (D. Mass. 2012) (citing Mass. Gen. Laws ch. 258, § 2).

"The Massachusetts Tort Claims Act ("MTCA") 'abrogates the doctrine of sovereign immunity

---

[6] It is unclear from the Amended Complaint if Conant was involved in Savage's August 15, 2017
suspension, which is also alleged to be retaliatory and would constitute an adverse action.

and allows a suit against a public entity, but only to the extent provided in the statute.'" *Wilmot v. Tracey*, 938 F. Supp. 2d 116, 143 (D. Mass. 2013) (quoting *Titus v. Town of Nantucket*, 840 F. Supp. 2d 404, 411 (D. Mass. 2011)).  "A negligent supervision claim requires a plaintiff to 'demonstrate that (1) there was a duty or standard of care owed to him by [defendant]; (2) [defendant's] conduct constituted a breach of such duty or violation of such standard of care; (3) [defendant's] employees' conduct was the proximate cause of his harm; and (4) he suffered actual harm.'" *Croteau v. MiTek Inc.*, No. 19-cv-12171-ADB, 2020 WL 4673532, at \*7 (D. Mass. Aug. 12, 2020) (alternations in original) (quoting *Grant v. John Hancock Mut. Life Ins. Co.*, 183 F. Supp. 2d 344, 368 (D. Mass. 2002)).

Defendants assert two grounds for dismissal of Plaintiffs' negligent supervision claim, namely that Plaintiffs failed to aver compliance with the MTCA's statutory presentment requirement, *see* Mass. Gen. Laws ch. 258, § 4, and that the claim is barred by Mass. Gen. Laws ch. 258, § 10(j), which provides an exception to the MTCA's waiver of immunity for "any claim based on an act or failure to act to prevent or diminish the harmful consequences of a condition or situation … which is not originally caused by the public employer or any other person acting on behalf of the public employer ...."  Mass. Gen. L. ch. 258, § 10(j).  The court need not reach these arguments, however, as the claim is subject to dismissal on another ground.  "'Massachusetts law does not recognize a negligent supervision claim brought by an employee against his or her employer based on the latter's purportedly negligent supervision of another employee.'" *Croteau*, 2020 WL 4673532, at \*7 (quoting *Mehic v. Dana-Farber Cancer Inst., Inc.*, Civil Action 15-12934-IT, 2018 U.S. Dist. LEXIS 227441, at \*58 (D. Mass. Aug. 31, 2018)).  *See also Bell v. Rinchem Co., Inc.*, Civil Action No. 4:14-40177-TSH, 2014 WL

11290899, at *18 (D. Mass. Dec. 2, 2014); *Hall v. FMR Corp.*, 559 F. Supp. 2d 120, 128 (D. Mass. 2008). Therefore, Plaintiffs' claim for negligent supervision is subject to dismissal.

    G.   Count VI:  Intentional Infliction of Emotional Distress

    Plaintiffs assert a claim for intentional infliction of emotional distress against Springfield and Conant in Count VI of their amended complaint. Defendants assert two grounds for dismissal. First, Defendants rely on this court's decision on Plaintiffs' motion for leave to file an amended complaint noting that public employers are immune from claims arising out of intentional torts. Defendants are correct. "[U]nder Section 10(c) of the MTCA, public employers remain immune from 'any claim arising out of an intentional tort[.]'" *Wilmot*, 938 F. Supp. 2d at 143 (alteration in original) (quoting Mass. Gen. Laws ch. 258, § 10(c)). "Accordingly, [Plaintiffs] cannot maintain a claim against the [City] for intentional infliction of emotional distress." *Id*.

    This same immunity, however, does not apply to Plaintiffs' claim against Conant, and, thus, the court must consider Defendants' second argument, which is that Plaintiffs' claims are barred by the exclusivity provision of the Massachusetts Workers' Compensation Act (the "MCWA"). *See* Mass. Gen. Laws. Ch. 152, § 24. "The MWCA provides 'the exclusive remedy for injuries to an employee suffered in the course of employment, regardless of the wrongfulness of the employer's conduct, or the foreseeability of harm.'" *Bazile v. UPS Ground Freight, Inc.*, 405 F. Supp. 3d 181, 184 (D. Mass. 2019) (quoting *Estate of Moulton v. Puopolo*, 5 N.E.3d 908, 914 (Mass. 2014)). "This bar extends to intentional torts committed by a co-employee 'in the course of the employment relationship.'" *Id*. (quoting *Anzalone v. Mass. Bay Transp. Auth.*, 526 N.E.2d 246, 249 (Mass. 1988)). "'An employee has acted in the course of employment whenever he has, on the employer's premises, engaged in conduct consistent with his contract of

hire and pertinent or incidental to his employment.'" *Id.* (quoting *Fredette v. Simpson*, 797 N.E.2d 899, 903 (Mass. 2003)). "Furthermore, an employee has acted in the course of employment even if he has more than one purpose for doing an act, 'as long as one significant purpose is related to the employment.'" *Fredette*, 797 N.E.2d at 903 (quoting *Mendes v. Tin Kee Ng*, 507 N.E.2d 1048, 1051 (Mass. 1987)). Here, the acts Plaintiffs allege Conant committed – protesting after-the-fact the decision of the Commonwealth's Human Resources Department to hold the Deputy Fire Chief examination when there were only two applicants, refusing Savage training on Telestaff until he was a permanent captain for six months, ordering District Chief Hess to discipline Savage, not disciplining the subordinates against whom Savage brought complaints, and not enforcing the SFD's residency requirement – were "incidental to" his employment. Therefore, Plaintiffs' claims of intentional infliction of emotional distress against Conant are also subject to dismissal.

### H.  Count VII:  Constitutional Equal Protection

In Count VII of their amended complaint, Plaintiffs assert that the Defendants violated their right to Equal Protection under the Fourteenth Amendment, and they seek damages pursuant to 42 U.S.C. § 1983. Defendants seek to dismiss the claim as against Calvi, asserting that the amended complaint does not identify any acts by Calvi that meet the standard for supervisory liability under § 1983. As noted in the court's order regarding Plaintiffs' motion for leave to file the amended complaint, "a supervisor such as Calvi is 'liable under the Equal Protection Clause for [discrimination and retaliation] created by [his] subordinates in state government only if [his] "link" to the unlawful [conduct] was one of  "supervisory encouragement, condonation, or acquiescence," *or* "gross negligence amounting to deliberate indifference"'" (Dkt. No. 75 at 12-13 (alterations in original) (quoting *Roy v. Correct Care Sols.,*

*LLC*, 914 F.3d 52, 72 (1st Cir. 2019)).  The court has already held that "Plaintiffs' allegations about Calvi's knowledge and his directive to Savage "to leave the legal issue of residency outside of the department" are sufficient to raise an inference that Calvi may have condoned or acquiesced in the SFD's alleged violations of Plaintiffs' constitutional rights to Equal Protection" (Dkt. No. 75 at 13).  Thus, Defendants are not entitled to dismissal of Plaintiffs' Equal Protection claim against Calvi.

   I.  Second Count VII:  Breach of Contract

   The Second Count VII of the amended complaint alleges that Plaintiffs are third party beneficiaries of contracts signed by fire department members at the rank of Deputy Chief or higher by which these SFD employees agreed to move into the City to comply with the City's residency law.  Plaintiffs allege that "a large number of Chiefs and Deputy Chiefs have breached those contracts," and that the City and Conant's "failure to enforce those contracts against … nonresidents has harmed Plaintiff and similarly situated employees as third party beneficiaries to those contracts" (Dkt. No. 76 at ¶¶ 145-146).  Defendants argue that Plaintiffs have failed to state a claim for recovery as third-party beneficiaries because they have not alleged that the City or Conant breached any contract of which they were third-party beneficiaries, but rather that they failed to enforce the contracts.  Defendants are correct.

   Under Massachusetts law "'when one person, for a valuable consideration, engages with another, by simple contract, to do some act for the benefit of a third, the latter, who would enjoy the benefit of the act, may maintain an action for the breach of such engagement.'"  *Spinner v. Nutt*, 631 N.E.2d 542, 546 (Mass. 1994) (quoting *Rae v. Air-Speed, Inc.*, 435 N.E.2d 628, 632-33 (Mass. 1982)).  Here, Plaintiffs have not alleged that the City or Conant breached any particular agreement of which Plaintiffs were third-party beneficiaries, but rather, only that the City and

Conant failed to enforce agreements that were breached by non-resident non-parties to this proceeding.  This does not state a cognizable claim for relief.  Accordingly, Defendants are entitled to dismissal of Plaintiffs' claim for breach of contract.

## V.    CONCLUSION

For the above-stated reasons, Defendants' motion to dismiss is GRANTED in part and DENIED in part, as follows:

(1) Defendants' motion is granted insofar as it seeks dismissal of all claims against the Springfield Fire Department;

(2) Defendants' motion is granted insofar as it seeks dismissal of Plaintiffs' Title VII discrimination claim against Conant;

(3) Defendants' motion is granted insofar as it seeks dismissal of Plaintiffs' Title VII claim against Springfield for discrete acts of discrimination occurring before October 26, 2016 for Savage and May 4, 2017 for Blake;

(4) Defendants' motion is denied insofar as it seeks dismissal of Plaintiffs' Title VII claim against Springfield for discrete acts of discrimination occurring on or after October 26, 2016 for Savage and on or after May 4, 2017 for Blake, and insofar as it seeks dismissal of Plaintiffs' hostile work environment claim;

(5) Defendants' motion is denied insofar as it seeks dismissal of the class allegations;

(6) Defendants' motion to dismiss is granted insofar as it seeks dismissal of Plaintiffs' Mass. Gen. Laws ch. 151B claims to the extent that they are premised on actions that occurred before October 9, 2015;

(7) Defendants' motion to dismiss is denied insofar as it seeks dismissal of Plaintiffs' Mass. Gen. Laws ch. 151B hostile work environment claim;

(8) Defendants' motion is granted insofar as it seeks dismissal of Plaintiffs' Mass. Gen. Laws ch. 31, §1(e) claim;

(9) Defendants' motion to dismiss is granted insofar as it seeks dismissal of Plaintiffs' Title VII retaliation claim against Conant and Calvi;

(10)   Defendants' motion to dismiss is denied insofar as it seeks dismissal of Plaintiffs' Mass. Gen. Laws ch. 151B retaliation claim against Conant and Calvi;

(11)   Defendants' motion to dismiss is granted insofar as it seeks dismissal of Plaintiffs' negligent supervision claim against Conant and Springfield;

(12)   Defendant's motion to dismiss is granted insofar as it seeks dismissal of Plaintiffs' intentional infliction of emotional distress claim against Conant and Springfield;

(13)   Defendants' motion to dismiss is denied insofar as it seeks dismissal of Plaintiffs' equal protection claim against Calvi; and

(14)   Defendants' motion to dismiss is granted insofar as it seeks dismissal of Plaintiffs' claim against Conant and the City for breach of contract.

Plaintiffs are not required to file an amended complaint complying with this Memorandum and Order.  Rather, the scope of Plaintiffs' claims will be determined based on the existing amended complaint and the contents of this Memorandum and Order.

It is so ordered.

/s/ Katherine A. Robertson
KATHERINE A. ROBERTSON
United States Magistrate Judge

DATED: March 8, 2021